

Jeffrey B. Schwartz, Washington, D. C., of National Tenants Organization, Mark Rudy and Daniel Karnes of People's Action Center, New Orleans, La., Marilyn G. Rose of National Legal Program on Health Problems of the Poor, Los Angeles, Cal., Barry J. Portman, New Orleans, La., of New Orleans Legal Assistance Corporation, for plaintiffs.

Peter G. Burke, of Phelps, Dunbar, Marks, Claverie & Sims, Thomas Rayer, of Denechaud & Denechaud, Walter M. Barnett, of Montgomery, Barnett, Brown & Read, Leonard B. Levy, of Dufour, Levy, Marks, Lucas & Osborne, Neville M. Landry, of Duke & Porterie, Charles Kohlmeyer, of Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, C. Ellis Henican, of Henican, James & Cleveland, Charles McHale, Jr., Charles Hamilton, Ben Slater, Walter Suthon, III, Stephen B. Lemann and J. Thomas Lewis, of Monroe & Lemann, New Orleans, La., Peter Duffy, Metairie, La., John J. D'Angelo, Gretna, La., Walter J. Harrell of State Dept. of Hospitals, Baton Rouge, La., for defendants.

Roszella COOK, Sallie Lee, Monica Hunter, Ora Price, Merita Moore, Mary Jones, Shirley Lampton, Wilhemenia Brown, on their own behalf, on the behalf of their minor children and on behalf of all others similarly situated

v.

OCHSNER FOUNDATION HOSPITAL, and its Director H. E. Hamilton et al.

Civ. A. No. 70–1969.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Nov. 25, 1970.

## MEMORANDUM OF REASONS

COMISKEY, District Judge.

In this class action the plaintiffs seek, *inter alia,* to compel the defendant hospitals to provide a reasonable volume of services to persons unable to pay therefor. The defendants, ten hospitals and the Director of the Louisiana State Department of Hospitals, have filed numerous pre-trial motions. It is the opinion of this Court that the most serious contention raised by the defendants is that the plaintiffs' two causes of action

brought under the Hill-Burton Act, 42 U.S.C. § 291 et seq., should be dismissed. Consequently, we will limit our discussion to this argument.

Under the provisions of the Hill-Burton Act federal funds are allotted to the states in order to assist them, *inter alia,* in carrying out their programs for the construction and modernization of hospitals and other medical facilities. 42 U. S.C. § 291(a). Any state wishing to participate in the Hill-Burton program may submit a state plan, which plan must designate a state agency as the sole agency for administering the plan. 42 U.S.C. § 291d. Furthermore, in order to receive Hill-Burton funds, a state must adhere to certain general regulations prescribed by the Surgeon General with the approval of the Federal Hospital Council and the Secretary of Health, Education and Welfare. Relevant to this requirement is 42 U.S.C. § 291c(e), which provides:

"The Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education, and Welfare, shall by general regulations prescribe—

\*       \*       \*       \*       \*       \*

"(e) that the State plan shall provide for adequate hospitals, and other facilities for which aid under this part is available, for all persons residing in the State, and adequate hospitals (and such other facilities) to furnish needed services for persons unable to pay therefor. Such regulations may also require that before approval of an application for a project is recommended by a State agency to the Surgeon General for approval under this part, assurance shall be received by the State from the applicant that \* \* \* *there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor,* but an exception shall be made if such a requirement is not feasible from a financial viewpoint." (Emphasis added)

Pursuant to the above statutory provision, the following regulation, 42 C.F.R. § 53.111(b), was promulgated:

"Before an application for the construction of a hospital or medical facility is recommended by a State agency for approval, the State agency shall obtain assurances from the applicant that:

\*       \*       \*       \*       \*       \*

"(b) *The facility will furnish below cost or without charge a reasonable volume of services to persons unable to pay therefor.* As used in this paragraph, 'persons unable to pay therefor' includes persons who are otherwise self-supporting but who are unable to pay the full cost of needed services. Such services may be paid for wholly or partly out of public funds or contributions of individuals and private and charitable organizations such as community chest or may be contributed at the expense of the facility itself. In determining what constitutes a reasonable volume of services to persons unable to pay therefor, there shall be considered conditions in the area to be served by the applicant, including the amount of such services that may be available otherwise than through the applicant. The requirements of assurance from the applicant may be waived if the applicant demonstrates to the satisfaction of the State agency, subject to subsequent approval by the Secretary that to furnish such services is not feasible financially; \* \* \*" (Emphasis added)

The plaintiffs wish to compel the defendants to comply with the above statute and regulation. But it is undisputed that the Hill-Burton Act contains no section expressly authorizing a private individual to judicially enforce its provisions. For this reason, the defendants contend that the plaintiffs simply have no right of action under the act. They cite the obvious complexities and difficulties involved in the enforcement and administration of this legislation as evi-

dence of Congress' intent to entrust this task solely to the Department of Health, Education and Welfare with the assistance of the Federal Hospital Council, a body composed in large part (six out of the twelve members) of "persons who are outstanding in fields pertaining to medical facility and health activities, * * *" 42 U.S.C. § 291k.

In order for plaintiffs to institute a private action under the Hill-Burton Act, they would have to be regarded as somewhat analogous to third-party beneficiaries of a contract and a civil action would have to be implied under the act. This argument was raised in another case involving the Hill-Burton Act but was firmly rejected. Stanturf v. Sipes, 224 F.Supp. 883, 889 (W.D.Mo.1963), aff'd 335 F.2d 224 (8th Cir. 1964).

It is the opinion of this Court that great weight must be given to the decision of Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969). This case did not involve the Hill-Burton Act, but we believe that the reasoning expressed in *Gomez* is fully applicable to the case at bar. The court in *Gomez* was concerned with the Wagner-Peyser Act of 1933, 29 U.S.C. § 49 *et seq.*, which creates a bureau known as the United States Employment Service "[i]n order to promote the establishment and maintenance of a national system of public employment offices * * *." 29 U.S.C. § 49. In order to receive the benefits of appropriations made under the Wagner-Peyser Act, a state must undertake certain obligations, including those duties imposed by regulations promulgated by the Secretary of Labor pursuant to said act. 29 U.S.C. §§ 49c, 49k. The regulations with which the court was concerned in *Gomez* provided for minimum wages and housing conditions for migratory farm workers. The plaintiffs, twenty-nine migratory farm workers, sued to obtain relief from injuries suffered as a result of the alleged violation of these regulations by their employer. Like the Hill-Burton Act, the Wagner-Peyser Act contains no provi-

sion authorizing an action by a private individual to obtain relief under said legislation. Nevertheless, the Fifth Circuit held that a private civil action by migratory farm workers can be implied under the Wagner-Peyser Act because these workers are the real beneficiaries and concern of the act. It is worthwhile to quote some of the reasoning urged by the court in support of this conclusion:

"We start with the proposition that there can be no doubt that the regulations of the Secretary of Labor were intended to protect the interest of the workers.

\* \* \* \* \* \*

"Thus from the 'legislative' history and from the regulations themselves it is plain that they were intended to confer an interest upon migrant farm workers such as Plaintiffs here. There being no explicit indication in the regulations or the Act that the workers were to have the opportunity to protect such conferred interest is not decisive since the existence of such an explicit grant of a remedy is not necessary. A civil remedy may be given to those protected by statutes or regulations by implication.

\* \* \* \* \* \*

"This Act, its setting and the regulations call imperatively for implied remedies here if the purpose of the regulations—the protection of migratory farm workers—is to be achieved.

\* \* \*

"It is unthinking that Congress, obviously concerned with people, would have left the Secretary with only the sanction of cutting off funds to the state. Moreover, the private civil remedy is a method of policy enforcement long honored explicitly in statutes and by implication with the help of courts. Congress more and more commits to individuals, acting as a private Attorney General, the effectuation of public rights through relief to individuals." 417 F.2d at 575–576.

We are of the opinion that the reasoning of *Gomez* is controlling in the case at

bar. Although different federal statutes are involved, the mechanisms by which the two acts are administered are similar. Neither act expressly authorizes civil actions by private individuals to enforce their provisions. Rather, both acts provide for the allotting of federal appropriations to state agencies on the condition that the states undertake certain obligations. We cannot see any reason to restrict the reasoning of the *Gomez* decision to cases under the Wagner-Peyser Act. Rather, we believe that the rationale of that case is general enough to be extended to statutes, such as the Hill-Burton Act, which are administered in the same way as the Wagner-Peyser Act.

■ In the case at bar, we hold that the Hill-Burton Act is designed, at least in part, to benefit persons unable to pay for medical services. Such people are not the sole beneficiaries of the act, but they certainly are the object of much of the act's concern. We do not feel that it is necessary to delve into the legislative history of the Hill-Burton Act in order to reach this conclusion. Rather, we are of the opinion that the act, by its own terms, makes it plain that persons unable to pay for medical services are one of the chief sets of beneficiaries of this legislation. It is a matter of the clearest logic that the only real beneficiaries of a hospital program are the people who need or may need medical treatment. This includes people of all classes, whether rich or poor. Thus, 42 U.S.C. § 291(a) states that:

"The purpose of this subchapter is—

"(a) to assist the several States in the carrying out of their programs for the construction and modernization of such public or other nonprofit community hospitals and other medical facilities as may be necessary, in conjunction with existing facilities, to furnish adequate hospital, clinic, or similar services to *all* their people; * * *." (Emphasis added.)

And 42 U.S.C. § 291c(e) is even stronger evidence that persons unable to pay

for medical services were among the chief beneficiaries sought to be served by the act. As we have hitherto noted, this provision states that the Surgeon General shall prescribe regulations obliging the hospitals of states receiving Hill-Burton benefits to make available "a reasonable volume of services to persons unable to pay therefor * * *." And, as we have also seen, such a regulation has been promulgated and is found at 42 C.F.R. § 53.111(b), supra.

■ For the foregoing reasons we must conclude that a private civil action may be implied under the Hill-Burton Act, and consequently the defendants' motions to dismiss the plaintiffs' cause of action under this act must be denied.

There have been a number of motions contesting the validity of the plaintiffs' class action. However, we hold that this is a valid class action under Rule 23(b) (2) and Rule 23(b) (3) of the Federal Rules of Civil Procedure. This, of course, is a conditional determination and the Court reserves the right to alter or amend the description of the class before the decision on the merits. However, the attorneys for all the parties should submit briefs containing recommendations on compliance with the notice requirements of Rule 23, Federal Rules of Civil Procedure.