**Jose H. YANEZ et al., Plaintiffs,**

**v.**

**Evans E. JONES, Jr., Director, Utah State Department of Social Services, Division of Family Services, et al., Defendants.**

**No. NC 38–72.**

United States District Court,
D. Utah, N. D.
April 4, 1973.

Jerry L. Bean, L. G. Bingham, Paul D. Vernieu, David J. Knowlton, and William F. Daines, of Weber County Legal Aid Services, Ogden, Utah, for plaintiffs.

Vernon B. Romney, Atty. Gen., and Kent S. Lewis, Asst. Atty. Gen., Salt Lake City, Utah, for defendants Evans E. Jones, Jr., Gerald Kotter and Sterlin Hollingshead.

K. Roger Bean, Layton, Utah, for defendants Tanner Memorial Clinic, Noall Z. Tanner, V. Robert Kelly, Wayne D. Bosworth, D. J. Cutler, A. Lloyd Poulsen, Harold L. Hansen, and Robert F. Bitner.

## MEMORANDUM AND ORDER

ALDON J. ANDERSON, District Judge.

Plaintiffs, recipients of federal Medicaid benefits,[1] have brought this bilateral class action against certain state employees charged with administering the Medicaid program in the Utah counties in which plaintiffs reside and against physicians who provide Medicaid services in those counties. Plaintiffs seek to enjoin the charging of amounts for Medicaid assistance which are above the fee level prescribed in the state Medicaid plan. As a basis for their cause of action plaintiffs rely upon the terms of 45 C.F.R. § 250.30(a)(6), which states:

> Participation in the [Medicaid] program will be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structures.

Plaintiffs allege that for a considerable length of time defendant providers have assessed and collected from plaintiffs $1.00 to $8.00 per office visit, which are non-authorized amounts in excess of the established fee structure and further al-

---

1. Provided by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (1965), as amended.

lege that defendant state employees have continued to make payments to such non-complying health providers under the Medicaid fee structure with knowledge that said providers have charged plaintiffs separate, additional fees not authorized by the Medicaid regulations.

Plaintiffs assert as alternative bases for jurisdiction 28 U.S.C. § 1331, which confers jurisdiction in cases which arise under the Constitution and laws of the United States and in which the matter in controversy exceeds $10,000, and 28 U.S.C. § 1343(3) & (4), which confer jurisdiction in actions authorized by 42 U.S.C. § 1983.

Defendant state employees moved to dismiss for lack of jurisdiction under either jurisdictional statute. Defendant health providers also moved to dismiss for lack of jurisdiction or to strike certain paragraphs of the complaint. The motion to strike contests the propriety of maintaining this action as a class action so far as the defendant class of doctors is concerned.

At a hearing on plaintiffs' motion for preliminary injunction held on September 26, 1972, it was represented to the court that a stipulation had been entered into between plaintiffs and defendant health providers whereby said defendants agreed to cease charging the excessive fees described in the complaint during the pendency of the suit. The court then denied plaintiffs' motion for preliminary injunction against both groups of defendants and granted a motion to strike the name of R. N. Hirst, M.D., as a defendant. On November 28, 1972, a hearing was held on the jurisdictional issues raised by the motions to dismiss and to determine whether the action was a proper class action. This was followed on December 19, 1972, by a further hearing on the jurisdictional issues.

## JURISDICTION

Defendant providers and defendant state employees each object to jurisdiction under 28 U.S.C. § 1331 on two grounds. Defendants urge, first, that the case is not one which arises under the Constitution or laws of the United States. There is, they say, no constitutional or statutory provision in issue, rather only an administrative regulation which makes no mention of a right to sue for its enforcement. Second, defendants urge that the case is not one wherein the matter in controversy exceeds $10,000, exclusive of interest and costs.

■ Plaintiffs claim this suit arises under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and under 45 C. F.R. § 250.30(a)(6). So far as the equal protection claim is concerned, plaintiffs have failed to adequately allege conduct on the part of any defendants toward non-welfare recipients which, when compared to the alleged conduct of the defendants toward the plaintiffs, gives rise to a claim of discrimination. Furthermore, plaintiffs have also failed to allege conduct on the part of any defendants toward other welfare recipients which, when compared to the alleged conduct of the defendants toward the plaintiffs, gives rise to a claim of discrimination. More particularly, there is no claim that defendant providers have charged (and defendant state officers have allowed to be charged) any nonplaintiffs who are also recipients of medical benefits under federally-assisted programs administered by the State of Utah fees for services comparable to those received by the plaintiffs which are less than the sum of the fee structure amount plus the alleged office visit charge. Therefore, this is not a suit which arises under the Constitution of the United States.

■■ The court does conclude, however, that the claim against the defendant state employees is a claim which arises under the *laws* of the United States. On more than one occasion federal courts have stated that a civil remedy may be implied from statutes *or* regulations which make no mention of a right to sue. *See, e. g.,* Euresti v. Sten-

ner, 458 F.2d 1115 (10th Cir. 1972); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969); Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970). The reasoning of those cases amply supports jurisdiction over defendant state employees in the instant action. There is no need to decide, as defendants urge, whether 45 C.F.R. § 250.30(a)(6) alone implies a remedy. This suit arises under provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., as well. The regulation in question implements the clear object of Title XIX which is to provide medical services to those who cannot afford them. The regulation must be enforceable against the State or this purpose of Title XIX will not be achieved. Where the State's eligibility for funds may be drawn into question for failure to comply with federal regulations, it is imperative that plaintiff Medicaid recipients, who are the real beneficiaries under the Medicaid program, be afforded a civil remedy under Title XIX and the regulation. In *Gomez*, cited above, the court dealt with regulations promulgated by the Secretary of Labor pursuant to the Wagner-Peyser Act. The regulations provided for minimum wages and housing for migratory farm workers. The plaintiffs sued to obtain relief from injuries suffered as a result of the alleged violation of these regulations by their employer. In the course of its opinion the court stated the following:

> We start with the proposition that there can be no doubt that the regulations of the Secretary of Labor were intended to protect the interest of the workers.
>
> \* \* \* \* \* \*
>
> Thus from the "legislative" history and from the regulations themselves it is plain that they were intended to confer an interest upon migrant farm workers such as Plaintiffs here. There being no explicit indication in the regulations or the Act that the workers were to have the opportunity to protect such conferred interest is not decisive since the existence of

such an explicit grant of a remedy is not necessary. A civil remedy may be given to those protected by statutes or regulations by implication.

> \* \* \* \* \* \*
>
> This Act, its setting and the regulations call imperatively for implied remedies here if the purpose of the regulations—the protection of migratory farm workers—is to be achieved.
>
> \* \* \* \* \* \*
>
> It is unthinking that Congress, obviously concerned with people, would have left the Secretary with only the sanction of cutting off funds to the state. Moreover, the private civil remedy is a method of policy enforcement long honored explicitly in statutes and by implication with the help of courts. Congress more and more commits to individuals, acting as a private Attorney General, the effectuation of public rights through relief to individuals.

417 F.2d at 575–576.

The court is of the opinion that the above language is controlling in the case at bar. Although the statutes and regulations involved in that case are different from those involved in the instant case, both statutes are administered in similar fashion. In both instances the statute provides for the allocation of federal resources to state agencies on the condition that the state agencies undertake certain obligations. The language quoted above from the *Gomez* decision makes it clear that the welfare recipients are the real beneficiaries of legislation such as the Wagner-Peyser Act and Title XIX of the Social Security Act. For this reason plaintiffs are entitled to sue state authorities in order to preserve their rights under the Medicaid program. In addition, it should be made clear that although the Department of Health, Education and Welfare has authority to review state Medicaid programs with a view toward cutting off funds to states which do not comply with 45 C.F.R. § 250.30(a)(6), the Medicaid program provides no procedure whereby recipients of services under the

program may trigger and participate in review by HEW. For this reason, neither the principle of exhaustion of administrative remedies, nor the doctrine of primary jurisdiction, has any application in this case. Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

■ The federal right which is jeopardized when the State fails to fully comply with federal regulations is the right to good health and full physical and mental development, which Congress and the Executive have sought to preserve by providing the medical services described in the Medicaid legislation and further delineated in 45 C.F.R. § 250.-30(a)(6) and other regulations promulgated by HEW. See Marquez v. Hardin, 339 F.Supp. 1364 (N.D.Cal.1969). That right is seriously compromised if providers are able to charge extra to recipients entitled under such provisions to services fully paid for by the government. Even an extra charge of $1.00 might prove to be an onerous burden for such a person. An extra charge of eight dollars might as much as double the total cost of the service over the authorized fee structure amount and would most certainly interfere with the recipient's access to the medical attention he needs. This is the evil which § 250.30(a)(6) was designed to avoid. Where this evil has allegedly occurred, a suit brought to enjoin its continuance is a suit arising under the laws of the United States.

■ The court further concludes that the matter in controversy exceeds $10,000. This requirement is met where it is reasonable to expect that the injury to be suffered by one who needs medical attention and is discouraged or delayed from obtaining it due to inability to pay a $1.00–8.00 charge or due to a doctor's refusal to provide treatment for prior failure to pay such charges exceeds in value the requisite jurisdictional amount. It is not necessary that such injury actually be incurred in order to satisfy that requirement. It is enough that the value of the right to be protected or the extent of the injury to be pre-

vented exceeds $10,000. Pennsylvania R. Co. v. City of Gerard, 210 F.2d 437 (6th Cir. 1954); Marquez v. Hardin, 339 F.Supp. 1364, 1370 (N.D.Cal.1969); 1 Barron & Holtzoff, Federal Practice and Procedure (Wright ed.) § 24, n. 54. It thus appears, and the court so holds, that with respect to each named plaintiff and each member of the plaintiff class the matter in controversy exceeds the value of $10,000, exclusive of interest and costs.

■ Plaintiffs also have a common and undivided interest in access to the fund provided by the Medicaid program for the payment of claims made by providers for medical services rendered to patients qualified under Medicaid. The matter in controversy, therefore, may be deemed to be the value of the fund out of which Medicaid provider claims are paid (see Bass v. Rockefeller, 331 F.Supp. 945 [S.D.N.Y.1971], vacated as moot, 464 F.2d 1300 [2nd Cir. 1972]) or the value of the aggregate right of plaintiffs to receive medical services paid for out of that fund (Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 [1939]), either of which clearly exceeds the value of $10,000. This case does not involve how Medicaid monies should be apportioned among the needy; rather, it involves a claim that an administrative practice engaged in by state authorities is restricting access by qualified recipients to the assistance they need. This satisfies the test which indicates that a common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), cited by defendants in opposition to aggregation, has been interpreted as intended to bar from the federal courts only trivial cases of aggregation, which are almost exclusively diversity cases. Bass v. Richardson, 338 F.Supp. 478 (S.D.N.Y.1971). See also Snyder v. Harris, 394 U.S. 332, at 341, 89 S.Ct. 1053, 22 L.Ed. 2d 319 (1969). The instant case is neither a diversity case, nor a trivial case. Like Bass II as Bass v. Richardson is

termed, the instant case involves the Medicaid program. In *Bass II* the court stated the following at page 482 of 338 F.Supp.:

> This case is not trivial and is not a diversity case. The right at issue is the proper administration of a program to which billions of dollars of federal funds have been committed and where Congress explicitly and repeatedly expressed concern that the program be rigorously and properly operated. If any case is proper for adjudication of important federal rights and issues of federal law by a federal court, it is this case.

Although it may be true that impending Medicaid cutbacks by the state in *Bass II* presented a more clear-cut case for federal jurisdiction than the present suit, nevertheless the court is of the opinion that pursuit by defendant state employees of the course of conduct of which plaintiffs complain would result in both the substantial equivalent of a cutback and a subversion of Congress' concern for a rigorously and properly operated program. The requisite jurisdictional amount is thus present with or without aggregation.

The court further concludes that the above reasoning applies only to defendant state employees and that plaintiffs have failed to state a cognizable claim against defendant providers or the class they purportedly represent. Neither the Social Security Act, nor 45 C.F.R. 250.30(a)(6), imposes any obligation upon Medicaid providers. The providers are "independent contractors" whose only obligations under the Medicaid program arise out of agreements entered into by them with the state agencies involved. These obligations are defined by the terms of the claims form submitted to the State by providers each time services are rendered. Under such circumstances, it is proper to characterize health service providers as "independent contractors," rather than as agents of the State Division of Family Services. To look to the providers, as State agents, for enforcement of the right of the plaintiffs under the instant statute and regulation would not only strain the facts of the case, it would also undermine what appears to be a firm intention on the part of Congress to maintain the traditional independence of the medical profession in the course of providing medical services for the needy.* The court, therefore, construes Title XIX and Regulation 250.30(a)(6) as creating a duty which runs to the State alone. As a result, plaintiffs' federal claims against the providers must be dismissed.

Plaintiffs having failed to raise a substantial federal question sufficient to invoke federal jurisdiction against the providers, there exists no claim from which the court's jurisdiction may be extended to plaintiffs' claim for damages in contract. Plaintiffs' pendent claim must, therefore, also be dismissed.

Inasmuch as jurisdiction is found to attach against the State under 28 U.S.C. § 1331, it is not necessary to decide at this time whether jurisdiction also attaches under 28 U.S.C. § 1343, except to state that it is the court's conclusion that § 1343 does not confer jurisdiction over defendant health providers or the class they purportedly represent.

### CLASS ACTION

The judgment of the court is that there exists a class of plaintiffs which may properly maintain the instant suit as a class action under subdivision (b)(2) of Rule 23 of the Federal Rules of Civil Procedure. This class consists of all persons qualified to receive Medicaid assistance living in the State of Utah who have been or will be charged above the fee structure amounts set forth in the Utah Medicaid plan by health service providers receiving claims payments under the plan.

---

* See 42 U.S.C. §§ 1395, 1396a(a)(23); 1965 U.S.Code Congressional & Administrative News, p. 1943.

Due to the lack of federal and pendent jurisdiction over the claims against defendant providers, only a claim for injunctive relief against the State remains. The action thus becomes one where the claim is made that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole" under Rule 23(b)(2). Furthermore, the court finds that the four general requirements of subsection (a) of Rule 23 are met in the instant case with respect to the plaintiff class as presently constituted.

Wherefore, the following order is entered.

It is hereby ordered:

1) that defendant state employees' motion to dismiss is denied;

2) that defendant health providers' motion to dismiss is granted;

3) that plaintiffs' pendent claim for damages is dismissed; and

4) that the named plaintiffs may properly maintain this suit as a class action on behalf of the class described in the court's memorandum.