Lola SAINE, Plaintiff-Appellant,

v.

The HOSPITAL AUTHORITY OF HALL COUNTY and the City of Gainesville and the Secretary of the Department of Health, Education and Welfare, Defendants-Appellees.

No. 73-3054.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1974.

James E. Palmour, III, Gainesville, Ga., John R. Myer, Atlanta, Ga., for plaintiff-appellant.

James A. Dunlap, Gainesville, Ga., John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., for defendants-appellees.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiffs sued the Hospital Authority of Hall County and City of Gainesville [Georgia] and the Secretary of Health, Education and Welfare, claiming damages against the Authority and injunctive relief against the Secretary ordering him to compel the Authority to cease violating the Hill-Burton Act, 42 U.S.C. § 291 et seq. Jurisdiction was predicated upon the Hill-Burton Act itself.

The court dismissed for failure to state a claim on which relief could be granted. We reverse.

Plaintiff alleged that the Authority operates a hospital, that she was sent by her doctor to the hospital for X-rays which were refused because she could not make an immediate payment, that she was refused medical and hospital treatment to which she was entitled under the provisions of the Hill-Burton Act, and that there is not made available in the hospital facility a reasonable volume of services to persons unable to pay therefor. She alleged also that the Department of Health, Education and Welfare is responsible for enforcing obligations and commitments under the Hill-Burton Act.

■ These allegations are sketchy, but they were sufficient to bring the plaintiff within the class of persons entitled to seek free services and to confer standing upon her. Euresti v. Stenner, 458 F.2d 1115 (CA10, 1972).

I. The existence of a private remedy

■ The District Court held that the Act did not provide expressly or by implication for a private civil remedy as a means of enforcing the Act's provisions. There is no express authorization but we hold there is implied authorization. The District Judge noted two lines of authority concerning implying a private remedy under the Hill-Burton Act, and elected to follow Stanturf v. Sipes, 224 F.Supp. 883 (W.D.Mo.1963), aff'd 335 F.2d 224 (CA8, 1964) cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965), and Don v. Okmulgee Memorial Hospital, 443 F.2d 234 (CA10, 1971), while declining to follow Euresti, supra, and two District Court decisions from this circuit, Organized Migrants in Community Action v. James Archer Smith Hospital, 325 F.Supp. 268 (S.D.Fla.1971), and Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970). In Cook the District Court concluded without resort to the legislative history that the provisions of the Hill-Burton Act evidenced a design, "at least in part, to benefit persons unable to pay for medical services," just as this court had concluded in Gomez v. Florida State Employment Service, 417 F.2d 569 (CA5, 1969), that the Wagner-Peyser Act was intended to benefit migratory farm workers. Noting that the "mechanisms by which the two acts are administered are similar," the District Court decided that the analysis supporting the implication of a private cause of action in Gomez was applicable in Cook as well. 319 F.Supp. at 605–606. Organized Migrants adopts the reasoning of Cook. Independent of Gomez, Cook, and Organized Migrants, Justice Clark's opinion in Euresti examines both the Act and its legislative history and concludes that the Act was clearly intended to provide indigents with hospital services and that,

> [w]ith this clear intent, it is not decisive that the language of the Act included no explicit indication that indigents were to have a right to enforce the Act's provisions. A civil remedy may be implied for those clearly within the protective realm of legislation or regulations in the public interest. Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 40, 36 S.Ct. 482, 60 L.Ed. 874 (1916).

458 F.2d at 1118. Stanturf v. Sipes, supra, provides only weak support for the District Court's conclusion. There the plaintiff apparently did not argue for implication of a private cause of action, but asserted the somewhat different theory that he was a third-party benefi-

ciary of a contract between the hospital and the United States. Stating simply that "[n]o authority has been cited to sustain this position nor have I been able to find any," the District Judge rejected the argument. 224 F.Supp. at 890. The relevance of Don v. Okmulgee Memorial Hospital, *supra*, is still more attenuated. There an osteopathic physician and some of his patients claimed that a hospital's action in denying him admission to the hospital staff violated, inter alia, the Hill-Burton Act. It was in this context, one different from that of the present action, that the Tenth Circuit stated that "the Act itself creates no personal rights or causes of action. . . ." A year later the same court, with the judge who wrote *Don* sitting as a member of the panel, decided *Euresti*. We believe that *Euresti, Cook* and *Organized Migrants* are persuasive on the issue here and should have been followed by the District Judge.

## II. The sovereign immunity of the Secretary

The decision of the District Judge was predicated on a determination that plaintiff had no cause of action under the Hill-Burton Act, a conclusion which we reject. The Secretary of HEW, however, urged both below and on appeal that insofar as the suit sought injunctive relief compelling him to enforce the requirements of the Hill-Burton Act against the Hospital Authority it was barred as an unconsented to suit against the United States. Taking into account the limited extent to which the parties have addressed themselves to sovereign immunity, the fact that the District Judge did not address the issue in his opinion, and the complexity of the doctrine, we decline to determine at this time whether the Secretary is correct in his contention. We do, however, attempt to provide some guidance for the District Court.

The Secretary's brief raises by one perfunctory reference, the issue of sovereign immunity, relying upon the following statement from Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23 (1963):

> [The suit is against the United States] if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947), or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." Larson v. Domestic and Foreign Commerce Corp., supra (337 U.S. at 704, 69 S.Ct. 1457 at 1468, 93 L.Ed. 1628) . . . .

In Zapata v. Smith, 437 F.2d 1024, 1025 (CA5, 1971) we recognized the rule, but we also noted the traditional exceptions to it:

> [A] line of cases, usually spoken of as an exception to this rule, . . . hold[s] that a suit against an official is not one against the United States if it is alleged either that the official acted beyond the statutory limitations of his power or, even though within the scope of his authority, the powers themselves are constitutionally void. See Dugan v. Rank, *supra*; Malone v. Bowdoin, 1962, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168; Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, 1631. Suit is justified on the theory that the official's conduct cannot be attributed to the sovereign because the official had no power in fact to do the challenged act. Larson v. Domestic and Foreign Commerce Corp., *supra*.

But analysis can no more be frozen at the exception than at the rule, for as *Zapata* explains "there is a well recognized exception to the exception," the modern formulation of which stems from footnote 11 in Larson v. Domestic and Foreign Commerce Corp., *supra*, 337 U.S. at 691, 69 S.Ct. at 1462, 93 L.Ed. at 1636, which states:

> Of course, a suit may fail, as one against the sovereign, even if it is

claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property. North Carolina v. Temple, (1890) 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849.

In *Zapata,* we held that the nature of the suit brought it within the "exception to the exception" because the relief sought, back pay, could only be satisfied out of the public treasury and would thus affect the "disposition of unquestionably sovereign property" in the form of public monies.[1] Granting the relief requested against the Secretary in the present case would not effect a raid on the treasury, but the question remains whether it would "require affirmative action by the sovereign" of such a nature that it too must fail under footnote 11 of *Larson.* While we have not previously addressed this question, the Courts of Appeals for the Ninth and District of Columbia Circuits have done so, and both have concluded that footnote 11 of *Larson* does not bar all actions seeking affirmative action by governmental officials.

In Knox Hill Tenant Council v. Washington, 145 U.S.App.D.C. 122, 448 F.2d 1045 (1971), plaintiffs sued officials of the Department of Housing and Urban Development (HUD), the National Capital Housing Authority (NCHA), and the District of Columbia Government seeking enforcement of housing regulations. At least with respect to the HUD defendants, whose responsibility was described in the opinion as "to police the performance of" contracts with local housing authorities, *Knox Hill* seems analogous to this case. The District Court had concluded that to the extent that the suit was one against officers and employees of HUD and NCHA sovereign immunity precluded jurisdiction. The Court of Appeals, in an opinion by Judge McGowan, examined *Larson's* footnote 11 and our decision in Gardner v. Harris, 391 F.2d 885 (CA5, 1968), concluded that both were inapposite, and reversed. The court stated, "There is nothing new about judicial entertainment of suits which charge that federal officials are acting outside of, or in conflict with, the responsibilities laid upon them by the Congress or the Constitution," citing in a footnote Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), and noting that long before *Young* "judicial authority was exercised through the writ of mandamus to compel public officials to adhere to the duties imposed upon them in their official capacities." 448 F.2d at 1052.

█ In State of Washington v. Udall, 417 F.2d 1310 (CA9, 1969),[2] the Ninth Circuit in an opinion by Judge Ely explored the doctrine of sovereign immunity in a suit whereby Washington sought relief from an administrative determination by the Secretary of the Interior that certain state-owned land was not entitled to delivery of irrigation water from the Columbia Basin Project. Noting Professor Jaffe's observation that *Larson's* footnote 11 says that the suits therein discussed "may fail" and not that they "must fail"[3] and the Supreme Court's approving citation in Arizona v. California, 373 U.S. 546, 584–585, 83 S. Ct. 1468, 1489–1490, 10 L.Ed.2d 542, 569 (1963), of Ickes v. Fox, 300 U.S. 82, 57

---

1. Similarly in Simons v. Vinson, 394 F.2d 732 (CA 5, 1968), and Gardner v. Harris, 391 F.2d 885 (CA 5, 1968), the suits involved the rights of the United States in certain property. In denying equitable relief in those cases we noted that the plaintiffs could have a remedy by means of suits for just compensation in the District Court or the Court of Claims, depending on the dollar amounts involved. See 394 F.2d at 737 n. 10; 391 F.2d at 887 n. 5.

2. Followed in Association of N. W. Steelheaders, etc. v. U. S. Army Corps of Engineers, 485 F.2d 67 (CA 9, 1973).

3. Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1, 34 (1963), discussed in 417 F.2d at 1317.

S.Ct. 412, 81 L.Ed. 525 (1937), a decision compelling the Secretary of the Interior to deliver irrigation water, the court concluded that *Larson's* footnote "was not intended to preclude, in the name of sovereign immunity, *all* suits for affirmative relief. . . ." 417 F.2d at 1318. Rather the footnote was held to mean that,

> the purposes for the doctrine of sovereign immunity may be controlling in some suits against officers so that the suits must be dismissed as suits against the Government, even though the officers were not acting pursuant to valid statutory authority, because the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm.

*Id.*

 We believe the approach outlined in *Udall* is a sound and workable one. On remand the District Court should determine whether refusing to enforce compliance by the Hospital Authority with the provisions of the Hill-Burton Act involved here is within the scope of authority given by statute to the Secretary,[4] and if not, "whether the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm." [5]

### III. Primary jurisdiction

The Hospital Authority asserts that the doctrine of primary jurisdiction requires that plaintiff first submit her claim to the state Hill-Burton agency before presenting it to the District Court. Plaintiff, however, asserts that no administrative procedure for reviewing individual complaints presently exists or

has ever existed. On the record before us, we are unable to determine whether this is in fact so, and consequently we leave the matter for further exploration by the District Court.

Reversed and remanded.

---

4. For discussions of when an official's action is *ultra vires*, see, e. g., Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 692–695, 69 S.Ct. 1457, 1462–1464, 93 L.Ed. 1628, 1637–1639 (1949) ; Taylor v. Cohen, 405 F.2d 277, 281 (CA 4, 1968).

5. We leave with the District Court whether it should require plaintiff to amend her com-

plaint so as to plead adequately any contention that the Secretary's alleged refusal to enforce compliance is outside the scope of his authority. *See* Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 690, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628, 1636 (1949).