**IRVINE MEDICAL CENTER, Plaintiff,**

v.

**Donna SHALALA, Defendant.**

**No. CV 98–8304–CAS (RNBx).**

United States District Court,
C.D. California,
Western Division.

June 10, 1999.

Patric Hooper, Hooper Lundy & Bookman, Los Angeles, CA, for Plaintiff.

Constance M. Komoroski, Leon W. Weidman, Asst. U.S. Atty., Office of U.S. Atty., Civil Div., Los Angeles, CA, for Defendant.

## ORDER RE: CROSS–MOTIONS FOR SUMMARY JUDGMENT

SNYDER, District Judge.

### I. *Introduction*

On October 13, 1998, plaintiff filed suit in this Court, challenging the validity of a Medicare regulation promulgated by the Secretary of Health and Human Services ("the Secretary").

The matter is currently before the Court on the parties' cross motions for summary judgment. The facts are not in dispute.

### II. *Statutory Background*

The Medicare program, established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides payment

for medical care for the aged and disabled. Eligible beneficiaries receive medical care from "providers," which are medical care facilities that have entered into agreements with the Secretary to furnish care, and the providers are then reimbursed by the Medicare program.

Part A of the Medicare program authorizes payments for institutional care provided primarily on an inpatient basis. *See* 42 U.S.C. § 1395c–1395i–4. Part B of the program authorizes payments primarily for outpatient services and durable medical equipment. *See* 42 U.S.C. §§ 1395j–1395w–4.

Medical care facilities, such as plaintiff, receive reimbursement under Part A or Part B (or both) from a "fiscal intermediary," such as Mutual of Omaha, that functions as the Secretary's agent in making payment on covered claims. At the close of each fiscal year, a provider must submit a "cost report" to the fiscal intermediary showing the costs it has incurred, and the appropriate portion of such costs to be allocated to the Medicare program during the fiscal period covered by the cost report. 42 C.F.R. §§ 413.20, 413.24.

When it was originally enacted in 1965, the Medicare program reimbursed providers based upon their "reasonable costs" for both inpatient and outpatient services. In 1972, Congress amended the Medicare Act to impose a limit on Medicare payments, restricting the annual reimbursement to the lower of a provider's aggregate reasonable costs or its aggregate customary charges. *See* Soc.Sec. Amendments of 1972, Pub.Law 92–603, § 233, *codified* at 42 U.S.C. § 1395f(b).[1] This restriction,

---

1. 42 U.S.C. § 1395f(b) provides as follows:

(b) Amount paid to provider of services

The amount paid to any provider of services (other than a hospice program providing hospice care, other than a critical access hospital providing inpatient critical access hospital services, and other than a home health agency with respect to durable medical equipment) with respect to services for which payment may be made under this part shall, subject to the provisions of sections 1395e and 1395ww, and 1395fff of this title, be—

(1) except as provided in paragraph (3), the lesser of (A) the reasonable cost of such services, as determined under section 1395x(v) of this title and as further limited by section 1395rr(b)(2)(B) of this title, or (B) the customary charges with respect to such services;

(2) if such services are furnished by a public provider of services, or by another provider which demonstrates to the satisfaction of the Secretary that a significant portion of its patients are low-income (and requests that payment be made under this paragraph), free of charge or at nominal charges to the public, the amount determined on the basis of those items (specified in regulations prescribed by the Secretary) included in the determination of such reasonable cost which the Secretary finds will provide fair compensation to such provider for such services; or

(3) if some or all of the hospitals in a State have been reimbursed for services (for which payment may be made under this

part) pursuant to a reimbursement system approved as a demonstration project under section 402 of the Social Security Amendments of 1967 or section 222 of the Social Security Amendments of 1972, if the rate of increase in such hospitals in their costs per hospital inpatient admission of individuals entitled to benefits under this part over the duration of such project was equal to or less than such rate of increase for admissions of such individuals with respect to all hospitals in the United States during such period, and if either the State has legislative authority to operate such system and the State elects to have reimbursement to such hospitals made in accordance with this paragraph or the system is operated through a voluntary agreement of hospitals and such hospitals elect to have reimbursement to those hospitals made in accordance with this paragraph, then the Secretary may provide for continuation of reimbursement to such hospitals under such system until the Secretary determines that—

(A) a third-party payor reimburses such a hospital on a basis other than under such system, or

(B) the aggregate rate of increase from January 1, 1981, to the most recent date for which annual data are available in such hospitals in costs per hospital inpatient admission of individuals entitled to benefits under this part is greater than such rate of increase for admissions of such individuals with respect to all hospitals in the United States for such period.

In the case of any State which has had such a demonstration project reimbursement sys-

known as the "lower of costs or charges" ("LCC"), applied to reimbursement for services under both Part A (inpatient) and Part B (outpatient). It is this portion of the Medicare statute that is implicated most directly in the matter currently before this Court.

The effect of the LCC restriction was to limit the amount of reimbursement such that if a provider's customary charges were less than its reasonable costs, Medicare would reimburse only for its charges, not its costs that are in excess of customary charges. Congress provided an exception to this restriction on reimbursement for public providers that furnish services free of charge or at nominal charge to the public. Such public providers would continue to receive reimbursement of full reasonable costs. *See* 42 U.S.C. § 1395f(b)(2).

In their reports on the 1972 amendments ("the Committee Reports"), both the House and Senate committees explained the rationale underlying the LCC restriction and the single exception for public providers. Both reports also contain an additional paragraph in which the committees acknowledged the potential negative effect of the restriction on institutions experiencing higher than normal costs for a discrete period of time. The House Committee Report stated:

Your committee recognizes that a provider's charges may be lower than its costs in a given period as a result of miscalculation or special circumstances of limited duration, and it is not intended that providers should be penalized by such short-range discrepancies between costs and charges. Nor does the committee want to introduce any incentive for providers to set charges for the general public at a level substantially higher than estimated costs merely to avoid being penalized by this provision. Thus, your committee recognizes the desirability of permitting a provider that was reimbursed under the medicare, medicaid and child health programs on the basis of charges in a fiscal period to carry unreimbursed allowable costs for that period forward for perhaps two succeeding fiscal periods. Should charges exceed costs in such succeeding fiscal periods, the unreimbursed allowable costs carried forward could be reimbursed to the provider along with current allowable costs up to the limit of current charges.

H.R.Rep. No. 92–231 (1971), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5087–88. *See also* Sen.Rep. No. 92–1230 (1971), at 203 (containing substantially the same language as the House Report).

tem in continuous operation since July 1, 1977, the Secretary shall provide under paragraph (3) for continuation of reimbursement to hospitals in the State under such system until the first day of the 37th month beginning after the date the Secretary determines and notifies the Governor of the State that either of the conditions described in subparagraph (A) or (B) of such paragraph has occurred. If, by the end of such 36–month period, the Secretary determines, based on evidence submitted by the Governor of the State, that neither of the conditions described in subparagraph (A) or (B) of paragraph (3) continues to apply, the Secretary shall continue without interruption payment to hospitals in the State under the State's system. If, by the end of such 36–month period, the Secretary determines, based on such evidence, that either of the conditions described in subparagraph (A) or (B) of such paragraph

continues to apply, the Secretary shall (i) collect any net excess reimbursement to hospitals in the State during such 36–month period (basing such net excess reimbursement on the net difference, if any, in the rate of increase in costs per hospital inpatient admission under the State system compared to the rate of increase in such costs with respect to all hospitals in the United States over the 36–month period, as measured by including the cumulative savings under the State system based on the difference in the rate of increase in costs per hospital inpatient admission under the State system as compared to the rate of increase in such costs with respect to all hospitals in the United States between January 1, 1981, and the date of the Secretary's initial notice), and (ii) provide a reasonable period, not to exceed 2 years, for transition from the State system to the national payment system.

In 1974, the Secretary issued a regulation implementing the LCC restriction. 39 Fed.Reg. 16882 (May 10, 1974), adding a new section 20 C.F.R. § 405.455 (now set forth as amended at 42 C.F.R. § 413.13). Under subsection (d) of the new regulation ("the carry forward provision"), an established provider whose allowable costs exceeded its charges in one fiscal period could carry those unreimbursed costs forward for two succeeding years. A new provider could carry forward unreimbursed costs for five years.

In April 1983, following the enactment of the Tax Equity and Fiscal Responsibility Act of 1982, Congress amended the Medicare reimbursement system by enacting a "Prospective Payment System" ("PPS"). Soc.Sec. Amendments of 1983, Pub.L. No. 98–21, Title VI (1983), *codified* at 42 U.S.C. § 1395ww(d). The PPS applied only to Part A (inpatient) services and established a set amount of reimbursement for such services, regardless of costs. The implementation of the PPS made the LCC restriction inapplicable to inpatient operating costs. However, the LCC restriction still applied to reimbursement for outpatient expenses.[2]

In 1986, the Secretary published notice of a proposed rule to eliminate the carry forward provision. 51 Fed.Reg. 33074 (Sept. 18, 1986). The Secretary promulgated the final regulation in 1988, eliminating the carry forward provision entirely, effective for fiscal periods beginning after April 28, 1988. 53 Fed.Reg. 10077 (Mar. 29, 1988), 42 C.F.R. § 413.13.

### III. *Facts*

Plaintiff is a contracted Medicare provider which first opened on October 12, 1990. In 1997, plaintiff was informed by its fiscal intermediary, Mutual of Omaha, that, for fiscal year ending August 31, 1991, plaintiff's allowable costs for outpa-

tient services had exceeded its customary charges for those services in the amount of $220,874. Because the five-year carry forward provision had been eliminated, plaintiff's reimbursement was limited to the amount of its charges and plaintiff was forced to absorb the $220,874 in excess costs.

On November 19, 1997, plaintiff requested a hearing before the Provider Reimbursement Review Board ("PRRB") regarding the determination by the fiscal intermediary, pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835. In September 1998, plaintiff requested expedited judicial review, pursuant to 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1842, contending that the regulation eliminating the carry forward provision was invalid. On September 28, 1998, the PRRB granted plaintiff's request for expedited judicial review. Plaintiff then filed its complaint in this action.

### IV. *Standard of Review*

The question currently before this Court is whether 42 C.F.R. § 413.13, eliminating the carry forward provision previously promulgated by the Secretary, is valid.

■ Under the Medicare Act, 42 U.S.C. § 1395oo, judicial review of final agency decisions regarding Medicare reimbursement is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (E). *See French Hosp. Med. Ctr. v. Shalala*, 89 F.3d 1411, 1416 (9th Cir.1996). Under the Administrative Procedure Act, an agency's final decision will only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A). *See also French Hosp.*, 89 F.3d at 1416. Furthermore, a regulation promulgated by an agency is to be given "controlling weight" unless it is "arbitrary,

---

**2.** In 1984, Congress passed the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. 98–369, in which Congress, among other things, further modified the LCC limits, requiring that

Part A and Part B be disaggregated when calculating the LCC limit, and expanding the number of providers eligible for the public provider exception to the LCC limit.

capricious, or manifestly contrary to controlling law." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), 467 U.S. at 844, 104 S.Ct. 2778.

In *Chevron,* the Supreme Court set forth the following standard for reviewing an agency's determination:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778. *See also French Hosp.,* 89 F.3d at 1416.

■ The Court's review of the Secretary's decision is limited to the documentation provided in the rulemaking record. *See French Hosp.,* 89 F.3d at 1416; *Vista Hill Foundation, Inc. v. Heckler,* 767 F.2d 556, 559 (9th Cir.1985).

## V. *Analysis*

### A. *Has Congress Directly Spoken to the Precise Question at Issue?*

Plaintiff contends that Congress stated its requirement that the Secretary implement a carry forward exception to the LCC through its language in the Committee Reports.

However, the principles of statutory construction make it clear that the first part of the *Chevron* test may only be answered by reference to the language of the statute itself. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 834 (9th Cir.1996) ("[O]ur approach to statutory interpretation is to look to legislative history only where we conclude the statutory language does not resolve an interpretive issue."); *Northern States Power Co. v. United States,* 73 F.3d 764, 766 (8th Cir. 1996) ("[W]hen ... the statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative.").

Here, as plaintiff concedes, the Medicare statute is silent on the issue of providing for the carry forward of expenses under the LCC limit. Indeed, Congress does explicitly state an exception to the LCC limit, allowing reimbursement of costs to public providers. *See* 42 U.S.C. § 1395f(b)(2). There is, however, no mention, explicit or implicit, of any other exception to the LCC limit in § 1395f(b), or anywhere else in the Medicare Act. Thus, the answer to the first part of the *Chevron* test is that Congress has not directly spoken to the question at issue.[3] The court,

---

**3.** Plaintiff also argues briefly that Congress' failure to address the carry forward provision in DEFRA indicates Congress' intent that the Secretary leave the provision in place. "Obviously, Congress was aware of the Secretary's LCC provisions when it directed the Secretary to amend the regulation through the 1984 DEFRA legislation. The fact that Congress did not direct the Secretary to disturb the carry-over provision at the same time is further proof that Congress did not intend the Secretary to amend the carryover portion

of the LCC limit regulation." Pl.'s Mot. Summ.J, at 9:17–21.

Plaintiff cites no authority to support its contention that Congress' failure to compel an agency to change a regulation is equivalent to a clear statement that Congress requires that the regulation remain unchanged. *See, e.g., Bob Jones University v. United States,* 461 U.S. 574, 600, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) ("[C]ourts are slow to attribute significance to the failure of Congress to act.").

then, must turn to the second part of the test.

### B. Was the Regulation Based on a Permissible Construction of the Statute?

#### 1. Standard

■ The Ninth Circuit has identified the following factors for determination of whether an agency's decision, including promulgation of a regulation, is arbitrary or capricious:

A decision may be found to be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. . . .

A rule may also be invalidated under the APA if an agency fails to explain the rule adequately. However,

[t]here is no obligation to make references in the agency explanation to all the specific issues raised in comments. The agency's explanation must simply enable a reviewing court to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them the way it did.

*Alvarado Community Hosp. v. Shalala,* 155 F.3d 1115, 1121 (9th Cir.1998) (quoting *Mt. Diablo Hosp. v. Shalala,* 3 F.3d 1226, 1234 (9th Cir.1993)).

■ In asserting that the regulation eliminating the carry forward exception was arbitrary or capricious, plaintiff advances a number of theories, which fall into one of two categories. In the first category, plaintiff argues that the regulation is contrary to the Congressional requirement that the carry forward exception be implemented. However, as discussed above, the Committee Reports do not express the clear intention of Congress. *See Shannon v. United States,* 512 U.S. 573, 583, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994) ("We are not aware of any case . . . in which we have given authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute."); *Northwest Forest Resource Council,* 82 F.3d at 834–35 (finding legislative history useful to interpret ambiguous statutes, but declining to give effect to legislative history that contradicts or does not directly address the text of the statute); *Northern States Power Co.,* 73 F.3d at 768 ("[W]e are not convinced that [plaintiff]'s litany of Congressional reports amounts to anything like a mandate. Congress knows very well how to mandate something. . . . A statement in a report that a committee of Congress 'expects' an agency to do something does not have the force of law."). *Accord Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 501, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988) (discussing statutory interpretation principles in the context of preemption analysis).

The statute in question, 42 U.S.C. § 1395f(b), is not ambiguous with regard to implementing a carry forward exception to the LCC; it is silent on the matter, as plaintiff concedes. *See* Pl.'s Opp. to Def.'s Mot.Summ.J., at 3 ("With the exception of services furnished by a public provider, the statute . . . is silent regarding those circumstances in which relief may be available from the LCC limit even when charges are less than costs.") Thus, plaintiff's argument that the Secretary acted contrary to Congressional intent cannot be

Thus, Congress' failure to address the carry forward provision in DEFRA does not assist in answering the first part of the *Chevron* test.

sustained under the principles of statutory interpretation.[4]

The second group of arguments presented by plaintiff focuses on the assertion that the Secretary's decision to issue the regulation eliminating the carry forward provision ran counter to the "uncontradicted evidence" before the agency. *See* Pl.'s Mot.Summ.J., at 11:4. Within this argument is plaintiff's assertion that the need for the carry forward provision is the same now as it was in 1974 when the Secretary enacted the carry forward provision.

Although it is true that the Secretary received 127 pages of public comment in opposition to the change, *see* Rulemaking Record, at 26–152, such comments were not the extent of the evidence before the Secretary. Furthermore, although an individual provider's desire for reimbursement of extraordinary expenses may be the same now as it was in 1974, many other circumstances that existed in 1974 have radically changed.

In the preamble to the final regulation, the Secretary pointed out the impact of one of the biggest changes that had occurred since the LCC limit was initially enacted by Congress, that being the initiation, by Congress, of the PPS for Part A (inpatient) services:

> Effective on or after October 1, 1982, the LCC principle is no longer applied to Part A (Hospital Insurance) coverage under the Medicare program. Under Part B, the hospitals with their comparatively large size and complex mix of services, are able to initiate changes to further reduce or avoid LCC disallowances for their outpatient services. Congress initially stated that it wanted to ensure against introducing "any incentive for providers to set charges for

the general public at a level substantially higher than estimated costs merely to avoid being penalized by this [that is, the LCC] provision." H.Rep. No. 231.... However, this concern is unwarranted because the LCC principle does not apply to hospitals subject to the ceiling on rate of hospital cost increases or hospitals subject to the prospective payment system, and such providers would have no incentive to artificially raise their charges. A consensus of the comments indicates that for these reasons hospitals would not be significantly affected by this final rule.

Rulemaking Record, at 9.

In an analysis of alternatives to elimination of the carry forward provision and an explanation for their rejection, the Secretary discussed the impact of other changes in the circumstances related to the LCC. Most critical to plaintiff's arguments is the Secretary's discussion of the alternative of continuing the carry forward provision only for new providers:

> We recognize that eliminating the carryover provision for new providers makes circumstances less favorable for some of them. However, the special extended carryover was established some time ago, when it was reasonable to believe that such a provision would serve to permit improved access to care as new providers entered the program. At this time, we do not believe it is necessary to give new providers a preferred status.

*See* Rulemaking Record, at 21.

In addition, the Secretary noted that:

> In the decade subsequent to the enactment of Pub.L. 92–603, it has been our experience that providers have had sufficient experience and adequate time

---

4. This is not to imply that the statements contained in the Committee Reports are irrelevant to the determination of whether the Secretary's decision to eliminate the carry forward provision was arbitrary or capricious. However, because the law is clear that legislative history does not equate to a Congressional mandate, the Committee Reports are not necessarily accorded greater weight than other evidence and thus are only one factor for the Secretary to consider in determining whether to amend the regulation. The Secretary is obligated to consider all relevant evidence, and all "important aspect[s] of the problem" before reaching a decision. *See Alvarado Community Hosp.*, 155 F.3d at 1121.

to make necessary adjustments and to establish a proper relationship between their costs and charges.

We expect that the proposed changes in the carryover provisions would affect only a minority of providers for the following reasons:

- Providers that continually incur unreimbursed costs from year to year do not have the opportunity to recover the disallowed costs with or without these changes because, in order to recover unreimbursed costs, charges must exceed costs in subsequent years.
- Providers that incur unreimbursed costs on a non-recurrent basis may be able to reduce or eliminate these costs through sound financial practices. . . .
- Furthermore, providers may be exempt from the LCC principle if they meet the nominal charge provisions, as described in this proposed rule. . . . [W]e believe that the carryover provisions are no longer necessary, and that most providers would not be affected by this change.

Rulemaking Record, at 16.

In the final regulation, the Secretary devotes a full five pages to responding to the comments received opposing the regulation. The Court finds that the Secretary's responses to the comments address all of the arguments put forward by plaintiff. The Court further finds that the Secretary's rationale for enacting the regulation eliminating the carry forward provision is fully explained and supported by all the evidence, including previous Congressional changes to the LCC, then available to the Secretary. This Court finds no basis to set aside the regulation published at 42 C.F.R. § 413.13.

## VI. *Conclusion*

Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is hereby granted.

### JUDGMENT

Pursuant to the Court's memorandum and order dated June 7, 1999, granting defendants' motion for summary judgment, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendant shall have judgment against plaintiff and plaintiff shall take nothing by its complaint.